IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Erma Frazier, ) | C/A No.: 1:11-3356-JMC-SVH |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | REPORT AND RECOMMENDATION |
| Angela Repass; Melissa Smith; Regina ) | |
| Kelly; Karol Seiler; David Repass; ) | |
| Salvation Army DHQ; Regina Davis, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Plaintiff Erma Frazier, initially proceeding pro se,[1] filed this employment action against Angela Repass, Melissa Smith, Regina Kelly, Karol Seiler, David Repass, Salvation Army DHQ (the "Army"), and Regina Davis (collectively "Defendants") arising out of her employment with the Army. Plaintiff alleges claims under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et. seq. ("ADEA"), and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et. seq. ("Title VII").[2] Pursuant to the district judge's order dated June 27, 2013 [Entry #112], this matter comes

---

[1] The Honorable J. Michelle Childs, United States District Judge, appointed Ronald Moak, Esq., as counsel for Plaintiff on July 2, 2013. [Entries #120, #122].

[2] In the event Plaintiff also intended to bring a state law claim of wrongful termination, such a claim cannot be maintained in this action. *Amason v. PK Mgmt., LLC*, No. 3:10-1752, 2011 WL 1100211, at *5 (D.S.C. Mar. 1, 2011) (finding that a plaintiff "also may not pursue a claim for wrongful termination in violation of public policy based on an alleged Title VII violation because in South Carolina a 'public policy' claim can only be maintained in the absence of a statutory remedy"), adopted by 2011 WL 1100169; *Zeigler v. Guidant Corp.*, No. 2:07-3448, 2008 WL 2001943, at * 2 (D.S.C. May 6, 2008) ("The *Ludwick* exception to at-will employment is not designed to overlap an employee's statutory rights to challenge a discharge, but rather to provide a remedy for a clear

before the court on Defendants' renewed motion for summary judgment [Entry #115]. Plaintiff did not file a brief in opposition to the renewed motion. However, the undersigned considers her responses [Entries #99, #100] to the original summary judgment motions [Entries #97, #98] as well as Defendants' objections [Entry #110] to the undersigned's prior Report and Recommendation [Entry #104] in addressing Defendants' renewed motion.

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(g) (D.S.C.). Because the motion for summary judgment is dispositive, this report and recommendation is entered for the district judge's consideration. For the reasons that follow, the undersigned recommends the district court deny the motion for summary judgment.

I.      Factual and Procedural Background[3]

Plaintiff began working for the Army in approximately 2001 as a shelter monitor. Pl. Dep. 18:7–11, 19: 12–13 [Plaintiff's deposition may be found at Entry #115-16]. As part of her duties, she processed new clients, prepared meals, cleaned, and made sure clients followed the shelter rules. Pl. Dep. 21:2–17. Plaintiff continued to serve as a shelter monitor until her termination in late 2011. Pl. Dep. 22:22–23:2.

---

violation of public policy where no other reasonable means of redress exists.") (citation omitted).

[3] Although Defendants contend they have been unable to complete discovery due to Plaintiff's failure to respond to discovery requests [Entry #115-1 at 3], Defendants have not filed any motions to compel in *Frazier I*, *Frazier II*, or *Frazier III*, nor have they filed any motions for dismissal for failure to prosecute.

On January 17, 2007, Annette Heath, the office and personnel manager, documented a telephone call from a prior shelter client. [Entry #115-5 at 1]. The client complained that Plaintiff was unprofessional, did not want to cook on her shift, and refused to let the client check on her mail. *Id.*

On July 2, 2007, Plaintiff was written up for failure to follow instructions when she refused to turn the television off after being asked to do so. [Entry #115-7 at 1].

According to a memorandum prepared by Ms. Heath, Plaintiff was written up on July 31, 2007, for arguing with another employee in front of a client. [Entry #115-5 at 2; Entry #115-6 at 3]. Plaintiff was also written up for failing to put meat in the freezer while she was on duty. [Entry #115-7 at 2].

In an evaluation dated May 30, 2008, the shelter director described Plaintiff as very reliable and very knowledgeable of her job. [Entry #99-4 at 3].

On June 5, 2008, a deputy with the Edgefield Police Department called the Army to report that she had taken a woman with two small children to the shelter for admission. [Entry #115-5 at 4]. Plaintiff, who was on duty at the time, closed the shelter for a period of time without approval and told the woman that she had to leave while the shelter was closed. *Id.* The deputy was concerned about the incident because the temperature was in the high 90s and was worried about the family, especially the one-year-old child, being out in the extreme heat. *Id.* Plaintiff was written up for failure to follow instructions. [Entry #115-7 at 3]. A follow-up note dated July 6, 2008, indicated that the deputy had called again to make a formal complaint about the incident. [Entry #115-5 at 4]. Ms. Heath emphasized to Plaintiff that there could be repercussions from this incident,

including a possible loss of funding from the United Way. *Id.*

Ms. Heath prepared memoranda on October 6, 2008, and November 18, 2009, noting that clients had complained about Plaintiff's attitude. *Id.* at 3, 6.

A note dated November 18, 2009, lists several instances of alleged misconduct by Plaintiff. [Entry #115-5 at 7]. The note appears to have been prepared by defendant Angela Repass, captain of the Aiken Army during the relevant time period ("Captain Repass"). Plaintiff was noted to have told a client there was no toilet paper; told someone to pick up trash, but refused to provide gloves or a trash bag; and refused to feed a client's children breakfast because they qualified for free meals at school. *Id.*

On May 27, 2010, Plaintiff attended a meeting with Captain Repass, Ms. Heath, and shelter director Kay Miles. [Entry #115-5 at 8]. The meeting was in response to the complaints of two clients who stated that Plaintiff was disrespectful to them. *Id.* According to the memorandum summarizing the meeting, which was signed by Plaintiff, Captain Repass told Plaintiff that she needed to adjust her personality because she had an ongoing issue of being rude and disrespectful. *Id.* Captain Repass further stated that Plaintiff needed to make immediate improvement or she may be terminated. *Id.* Plaintiff disagreed with what the clients said about her and stated that she was only following the rules of the shelter. *Id.* She was written up for failure to follow instructions and improper conduct. [Entry #115-7 at 4]. At her deposition, Plaintiff testified that the complaining clients had lied. Pl. Dep. 48:4–11.

On June 28, 2010, Plaintiff was written up for unnecessarily working overtime without pre-approval. [Entry #115-7 at 5].

4

An evaluation of Plaintiff completed by her direct supervisor, Ms. Miles, on July 24, 2010, indicated that Plaintiff had improved greatly since being written up two to three months prior to the evaluation. [Entry #99-4 at 2]. Ms. Miles noted that Plaintiff had seriously taken note of all directives and adhered to instructions. *Id.* In the short-term goals section of the evaluation, Ms. Miles indicated that Plaintiff should continue to improve on staff-client relationships and continue to focus on the needs of the clients. *Id.*

Plaintiff's doctor completed a restricted duty statement on August 10, 2010. [Entry #115-18 at 1].[4] The statement indicated that due to her severe osteoarthritis, Plaintiff could not lift her left arm at all. *Id.*

In July 2011, Plaintiff was named as the Aiken Army's employee of the month. [Entry #99-4 at 5]. She was noted to have been a faithful employee at the shelter for over 10 years and was described as someone who always does what is asked of her. *Id.* Plaintiff was named as employee of the month one other time, but the date is not included in the record. *Id.* at 1.

On July 18, 2011, a client wrote a letter in support of Plaintiff. [Entry #99-6 at 1]. He stated that Plaintiff followed the rules and did her job in a professional and fair manner. *Id.*

Defendants assert that they moved Plaintiff from second shift to the night shift from August 12, 2011, to September 15, 2011, to accommodate her physical restrictions. [Entry #115-1 at 4–5].

A memorandum dated September 9, 2011, prepared by Captain Repass and Denise Hicks, noted that Plaintiff had asked to be put back on second shift. [Entry #115-5 at 9]. Captain Repass explained that Plaintiff could not perform the duties required on second shift because she had a doctor's note stating that she could only perform light duty and could not lift her left shoulder. *Id.* Plaintiff complained that younger workers were getting extra hours and she was not. *Id.* Captain Repass stated that she had been scheduling Plaintiff to work weekend shifts for extra hours, but that Plaintiff had complained about working weekends at least three times. *Id.* Captain Repass indicated that Plaintiff's hours were set at 37 or 38 hours per week to avoid overtime. *Id.*

Plaintiff's doctor completed a Fitness for Duty Certification on September 14, 2011, which noted that she had no restrictions on her return to work. [Entry #115-20 at 1].

On September 16, 2011, Plaintiff was written up for failure to properly fill out government-required paperwork and failure to clock out at lunchtime, which resulted in two hours of overtime. [Entry #115-7 at 6]. Plaintiff refused to sign the disciplinary report. *Id.* She testified that she had stopped clocking out on her lunch break because she was not permitted to leave the building during her break and considered herself to be working. Pl. Dep. 50:13–16.

On October 31, 2011, Plaintiff filed a charge of discrimination ("Charge") with the South Carolina Human Affairs Commission ("SCHAC"). [Entry #115-8 at 2]. In it, she

---

[4] Defendant asserts that Plaintiff's restricted duty statement was issued in August 2011 [Entry #115-21 at 5]; thus, it is unclear whether the 2010 date on the restricted duty

alleged she had been discriminated against on the basis of age and race when (1) her hours were cut on June 11, 2011; and (2) she was denied a promotion on June 23, 2011. *Id.* at 3. She also asserted that her wages had remained the same for many years, but that younger employees had been hired at a higher rate. *Id.*

In an undated letter, a shelter client noted that on November 17 (no stated year), Plaintiff failed to save dinner for him even though he gave her advance notice that he would be late. [Entry #115-6 at 1]. The client also stated that Plaintiff kept the air conditioning set at 50 degrees in the shelter's day room and that clients had to wear their coats and cover up with blankets. *Id.*

On November 21, 2011, Captain Repass issued an Interoffice Memo to Plaintiff with a subject line "SUSPENSION" that provided the following:

> This memo will serve to inform you that as of today you are suspended without pay awaiting a decision by our Divisional Finance Board. Reason: Discussing confidential information with shelter residents and not following instructions.
>
> If you decide you would like to resign, please let us know in written form.
>
> Thank you for your cooperation with this matter.

[Entry #115-3 at 1]. On the same day, Captain Repass completed an Employment Termination form citing insubordination and misconduct as the reasons for termination and stating that Plaintiff had "no respect for authority and [had] been causing damage to the image of The Salvation Army." [Entry #99-4 at 4]. Plaintiff testified that Captain Repass accused her of talking to clients about the termination of another shelter

---

statement was a scrivener's error.

employee. Pl. Dep. 24:6–25:19. Plaintiff denied the allegation. Pl. Dep. 26:17–19. Plaintiff's termination appears to have been approved on December 20, 2011 (*id.*), although she testified that she was notified of her termination on December 6, 2011. Pl. Dep. 93:25–95:7.

Plaintiff filed the instant action ("*Frazier I*") on December 9, 2011. [Entry #1].

On December 19, 2011, Plaintiff amended her Charge to add discharge as an issue and to include a retaliation claim. [Entry #115-10 at 3–4]. SCHAC issued a dismissal and right-to-sue notice on February 22, 2012. [Entry #115-12 at 1].

On March 28, 2012, Plaintiff filed two separate federal actions (1:12-882, "*Frazier II*," and 1:12-883, "*Frazier III*") alleging claims related to her employment with the Army.

On May 23, 2013, the district judge consolidated *Frazier I*, *Frazier II*, and *Frazier III*. [Entry #95]. Prior to consolidation, the defendants in *Frazier II* and *Frazier III* had filed motions for summary judgment [Entries #97, #98]. On June 4, 2013, the undersigned recommended denial of the motions based on defense counsel's failure to support the motions with record evidence. [Entry #104]. Defendants objected to the recommendation and included record support. [Entry #110]. The district judge permitted Defendants to file their objection as a renewed motion for summary judgment. [Entry #112]. Defendants filed the renewed motion for summary judgment on June 28, 2013. [Entry #115]. Though permitted to file a supplementary response, it appears that Plaintiff

8

has instead elected to rely on her opposition briefs [Entries #99, #100][5] filed in response to the original motions for summary judgment. In analyzing the pending motion, the undersigned considers the claims stated in the complaints filed in *Frazier I*, *Frazier II*, and *Frazier III*.

II.     Discussion

    A.     Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. At the summary judgment stage, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id*. at 255.

    B.     Analysis

Read liberally, Plaintiff states claims for discrimination and retaliation under Title VII and the ADEA. Defendants argue that Plaintiff has failed to exhaust her administrative remedies because she filed *Frazier I* before receiving a right-to-sue notice from SCHAC. [Entry #115-1 at 7–10]. Without setting forth the elements of any of

---

[5] Because her opposition briefs are identical, the undersigned cites only to Entry #99 when referencing Plaintiff's arguments or exhibits herein.

9

Plaintiff's claims or articulating which claims they are addressing, Defendants also generally argue that Plaintiff has failed to state a prima facie case and that, even if she had, that Defendants have set forth a legitimate, non-discriminatory reason for their employment action. *Id.* at 11–12.

1. Individual Defendants

As an initial matter, the undersigned finds that the court is without subject matter jurisdiction over the individual defendants because there is no individual liability under Title VII or the ADEA. Defendants have failed to make this argument at any stage of the proceedings in *Frazier I*, *Frazier II*, and *Frazier III*; however, courts are duty-bound to clarify their subject matter jurisdiction, even if the parties do not develop it as an issue. *Simon Coal Co. v. Apfel*, 226 F.3d 291, 299 (4th Cir. 2002); *Cook v. Georgetown Steel Corp.*, 770 F.2d 1272, 1274 (4th Cir. 1985) (finding that "lack of subject matter jurisdiction is an issue that requires *sua sponte* consideration when it is seriously in doubt").

Title VII prohibits discrimination by employers. *See* 42 U.S.C § 2000e–2. Title VII defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees . . . and any agent of such person." 42 U.S.C. § 2000e(b). In construing the definition of "employer" under Title VII, it is well-established that Title VII does not impose individual liability on supervisory employees. *See Lissau v. Southern Food Serv., Inc.*, 159 F.3d 177, 180–81 (4th Cir. 1998) (holding that supervisors cannot be found liable in their individual capacity under Title VII because they do not fit within the definition of an employer).

Likewise, the Fourth Circuit has held that the ADEA limits liability to employers and prohibits individual liability against employees as agents of the employer. *Birbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 510 (4th Cir. 1994).

Because all of Plaintiff's claims are brought under either Title VII or the ADEA and those statutes do not provide for individual liaiblity, the undersigned recommends that Angela Repass, Melissa Smith, Regina Kelly, Karol Seiler, David Repass, and Regina Davis be dismissed as defendants. Dismissal of these defendants leaves the Army as the only remaining defendant.

      2.    Exhaustion

Defendants argue that Plaintiff has failed to exhaust her administrative remedies under Title VII because she filed *Frazier I* prior to receiving her right-to-sue notice from SCHAC. [Entry #115-1 at 7]. By statute, a civil action under Title VII must be filed within 90 days of the date of receipt by a claimant of a duly-issued notice of right to sue from the EEOC. 42 U.S.C. § 2000e–5(f)(1). Defendants accurately cite to the statute, but they neglect to address how their argument is impacted by the filing of *Frazier II* and *Frazier III*, both of which were filed after SCHAC issued a right-to-sue notice to Plaintiff. Because *Frazier II* and *Frazier III* were timely-filed and the three complaints have been consolidated into the present action, the undersigned recommends rejecting Defendants' exhaustion argument.

      3.    Plaintiff's Causes of Action

          a.    Race and Age Discrimination Claims

In Title VII and ADEA claims, absent direct evidence of discrimination, as is the

11

case here, Plaintiff must prove her allegations under the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and its progeny. *See Laber v. Harvey*, 438 F.3d 404, 430 (4th Cir. 2006) (finding that in the absence of direct evidence, courts analyze age discrimination claims under the same burden-shifting framework used to resolve other discrimination cases).[6] Under *McDonnell Douglas*, Plaintiff first must establish by a preponderance of evidence each element of her prima facie case of discrimination. *Id.* at 802. To state a prima facie case of race or age discrimination, Plaintiff must prove: (1) she is a member of a protected class; (2) she was performing satisfactorily; (3) she suffered an adverse employment action; and (4) similarly-situated employees received more favorable treatment. *Coleman v. Maryland Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (Title VII); *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004) (ADEA). Where Plaintiff claims discriminatory discharge, the fourth element has also been identified as whether Plaintiff can demonstrate that the position was filled by a similarly-qualified applicant outside of the protected class. *King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003).

If Plaintiff establishes a prima facie case, the burden shifts to the Army to produce a legitimate, nondiscriminatory reason for the disparate treatment. *Texas Dep't. of Cmty*

---

[6] The Supreme Court has noted that it "has not definitively decided" whether the *McDonnell Douglas* framework, first developed in the context of Title VII cases, "is appropriate in the ADEA context." *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 175, n. 2 (2009). In the absence of further direction from the Supreme Court, the undersigned must follow Fourth Circuit precedent, which applies the *McDonnell Douglas* framework to ADEA claims. *See Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004); *see also Bodkin v. Town of Strasburg*, 386 Fed. Appx. 411,

*Affairs v. Burdine*, 450 U.S. 248, 254 (1981).  This is merely a burden of production, not of persuasion.  *St. Mary's Honor Ctr v. Hicks*, 509 U.S. 502, 506 (1993).

Once the Army meets its burden of production by producing a legitimate, nondiscriminatory reason, the sole remaining issue is "discrimination *vel non*."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (citing *Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716 (1983)).  In other words, the burden shifts back to Plaintiff to demonstrate by a preponderance of the evidence that the legitimate reason produced by the Army is not its true reason, but was pretext for discrimination.  *Reeves*, 530 U.S. at 143.  Throughout the burden-shifting scheme set forth in *McDonnell Douglas*, the ultimate burden of proving that the Army intentionally discriminated against Plaintiff remains at all times with Plaintiff.  Plaintiff has the ultimate burden of presenting evidence from which a reasonable jury could conclude the Army intentionally discriminated against her.

Liberally construing her pleadings, Plaintiff alleges that the Army discriminated against her by (1) reducing her hours, (2) failing to permit her the opportunity to seek the position of shelter director,[7] and (3) terminating her employment.

The Army concedes that Plaintiff is a member of a protected class under Title VII, but fails to address Plaintiff's claims under the ADEA.  [Entry #115-1 at 11].  Without identifying the remaining elements of a prima facie case of discrimination, the Army

---

413–14 (4th Cir. 2010) (continuing to apply the *McDonnell Douglas* framework following the *Gross* opinion).

[7] Because Plaintiff never had an opportunity to apply for the position, the undersigned analyzes her claim as one for discrimination rather than as a failure-to-promote claim.

concludes that Plaintiff is unable to meet them. *Id.* The remainder of the Army's argument as to the prima facie case focuses on Plaintiff's allegations related to the shelter director position. *Id.* The Army contends that although Plaintiff alleges that the position was given to Ms. Smith (a younger, white female), Ms. Smith was never actually given the position. *Id.* Instead, the Army contends, without any record support, that the shelter director duties were merged with Ms. Smith's existing role within the Army. *Id.* at 11–12. The Army argues that even if Plaintiff could prove a prima facie case, her documented history of warnings and counseling sessions was the legitimate, non-discriminatory reason for the Army's "employment action." *Id.* at 12. Although the Army fails to identify which "employment action" it is referencing, it appears to be referring to the Army's decision to assign the shelter director duties to Ms. Smith rather than taking applications, including that of Plaintiff, for the position.

Plaintiff disputes the Army's assertion that it merged the shelter director duties with Ms. Smith's existing duties. [Entry #99 at 1]. In support, she references a letter identifying Ms. Smith as the shelter director. [Entry #99-5 at 1]. The Army has failed to provide any evidence in support of its allegation that the duties were merged. Consequently, the undersigned finds there to be a genuine dispute of material fact as to the legitimate, non-discriminatory reason offered by the Army. Therefore, the undersigned recommends denial of the Army's motion for summary judgment as to Plaintiff's Title VII and ADEA claims related to the shelter director position.

With regard to Plaintiff's claim that her hours were reduced, the Army admits having reduced her hours from 40 hours to 37.5 hours per week. [Entry #115-1 at 4].

14

The Army contends, without record support, that it took several steps in 2011 "to tighten its belt in order to remain viable." *Id.* These steps allegedly included converting two full-time positions to four part-time positions and reducing employee hours. *Id.* However, the Army argues that Plaintiff continued to work a minimum of forty hours and was never affected financially. *Id.* at 9. It further argues that Plaintiff's hours only fell below 40 hours during the period that she required a medical accommodation for her left arm. *Id.* at 4. In support, the Army references Plaintiff's earnings statement from June 3, 2011, through November 4, 2011. [Entry #115-17]. While there are handwritten notes on the earnings statement indicating that Plaintiff worked 40 or more hours per week with the exception of the time she required a medical accommodation, the Army has not provided sufficient explanation regarding this document (e.g., why the notes regarding the number of hours worked are handwritten, who wrote them, and when) for it to be the sole basis negating Plaintiff's contention related to her hours. Furthermore, in response to Plaintiff's argument that younger, less-experienced workers were permitted to work longer hours, the Army cites to a payroll spreadsheet that it contends refutes her argument. [Entry #115-1 at 6, 9]. However, the Army fails to include the payroll spreadsheet in the record. In addition, Plaintiff has provided several work schedules documenting that she was scheduled for less than 40 hours per week. [Entry #99-2 at 1–6]. For these reasons, the undersigned recommends denying the Army's motion for summary judgment as to Plaintiff's claim related to her hours.

Plaintiff's termination is the final basis for her discrimination claims. Although the Army argues that it terminated Plaintiff for "continued performance issues," [Entry

15

#115-1 at 7], the reason stated for her termination November 21, 2011, suspension was that she had been "[d]iscussing confidential information with shelter residents and not following directions." [Entry #115-3 at 1]. The Army contends that Plaintiff was discussing the termination of Ms. Miles with shelter residents [Entry #115-1 at 6], but Plaintiff testified that she did not engage in this behavior. Pl. Tr. 87:19–88:5. The Army has provided Plaintiff's termination form and a four-sentence memorandum in support of its stated reason for the termination. [Entries #115-3, #115-4]. It has not provided any investigation reports, affidavits, or deposition testimony regarding the reason for Plaintiff's termination. Furthermore, the Army has provided no argument as to whether Plaintiff has established a prima face discrimination claim based on these facts and has failed to analyze the claim under the *McDonnell-Douglas* framework. In light of the lack of argument on this claim and the fact that Plaintiff disputes the reason offered for her termination, the undersigned recommends denying the Army's motion for summary judgment as to Plaintiff's discrimination claims based on her termination.

      b.  Retaliation Claims

  Plaintiff also asserts retaliation claims under Title VII and the ADEA. [*Frazier III*, Entry #1 at 3–4]. Defendants have failed to address this claim other than to state that Plaintiff "has not been the victim of discrimination or retaliation and has not put forth any issue of material fact toward that allegation." [Entry #115-1 at 10–11]. Because Defendants have failed to meaningfully address Plaintiff's retaliation claims, the undersigned recommends that the claims survive summary judgment as to defendant Army.

16

III.     Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends that defendants Angela Repass, Melissa Smith, Regina Kelly, Karol Seiler, David Repass, and Regina Davis be dismissed, sua sponte, for lack of subject matter jurisdiction. The undersigned further recommends that Defendants' renewed motion for summary judgment [Entry #115] be denied as to the single remaining defendant, the Army. In so recommending, the undersigned notes that the recommendation is based on the inadequacy of Defendants' briefing rather than on the strength of Plaintiff's case. In light of the multiple opportunities Defendants have had to properly brief the relevant issues and provide documentary support, the undersigned is constrained to recommend the renewed motion for summary judgment be denied.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

July 17, 2013                                              Shiva V. Hodges
Columbia, South Carolina                           United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

17

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).